UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:14-CR-086 |
| | ) | |
| DAVID W. O'DELL | ) | |

**MEMORANDUM AND ORDER**

*Pro se*, the defendant moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 553]. The United States has responded in opposition to the motion [docs. 560, 564], and the defendant has not replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be denied.

## I. BACKGROUND

In May 2015, the Honorable Thomas W. Phillips sentenced the defendant, as a Career Offender under U.S.S.G. § 4B1.1, to a 188-month term of imprisonment for conspiring to manufacture and distribute methamphetamine. The defendant is presently housed at FCI Edgefield with a projected release date of September 26, 2024. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited November 25, 2020). The defendant now moves for compassionate release due to the COVID-19 pandemic and hepatitis C. He also argues that he would receive a lesser, non-Career Offender, term of imprisonment if sentenced today under the current Sentencing Guidelines.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have generally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at

2

least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) (Guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release.").[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Id.* at 11.

### A. Exhaustion

The defendant has previously submitted a request to the BOP which was construed as one for compassionate release, and more than 30 days have passed since that request was received by the warden. [Doc. 552, p. 2]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic and his hepatis C diagnosis. He also argues that, if sentenced today, he would face a lesser term of imprisonment due to subsequent amendments to the Sentencing Guidelines.

Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.


3

Case 3:14-cr-00086-RLJ-CCS Document 565 Filed 12/02/20 Page 3 of 8 PageID #: 2315

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records submitted by the United States show that the defendant has indeed been diagnosed with hepatitis C. [Doc. 564]. There is, however, no documentation that this condition impacts the defendant's functioning or that it has heightened *his* risk of COVID-19 complications. The defendant tested positive for COVID on July 24, and by August 10 the infection was resolved. [*Id.*]. Additionally, the defendant's BOP SENTRY

5

Report shows that he is categorized as Care Level 1. "Care Level 1 inmates are less than 70 years of age *and are generally healthy*. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Nov. 25, 2020) (emphasis added).

Turning to the defendant's background, his involvement in the instant methamphetamine conspiracy consisted of cooking, smurfing, and distributing over a six-and-a-half-year period. [Presentence Investigation Report ("PSR"), doc. 404, ¶¶ 23-27]. The defendant was age 36 when sentenced and had already compiled a staggering 30 criminal history points. [*Id.*, ¶ 69]. There are numerous prior convictions for theft and burglary. [*Id.*, ¶¶ 51, 54, 56-59, 65]. Other noteworthy convictions include: prohibited weapons; evading arrest (four convictions); resisting arrest; felony evading arrest (featuring a struggle with the arresting officer); arson of a vehicle; introduction of contraband into a penal facility; domestic assault (in which multiple witnesses reported that the defendant threatened, while armed, to kill several people); and injury to cemetery property. [*Id.*, ¶¶ 52, 54, 58, 60, 62-64]. There have been numerous violations of probation and parole. [*Id.*, ¶¶ 56-57, 59-60, 63, 65, 68].

The defendant's SENTRY Report shows that he currently works on a prison construction detail and has taken some educational courses. These facts are appreciated by the Court. Conversely, the defendant has incurred four disciplinary sanctions during his current term of imprisonment (disruption of mail monitoring, stealing, possession of his PSR, *and assault*) and is considered by the BOP to have a high risk of recidivism. There

is a long history of polysubstance abuse [doc. 404, ¶ 81], yet SENTRY disappointingly shows that the defendant has "no interest" in substance abuse programming.

Lastly, within its discretion, the Court will presume without deciding that the defendant might face a lower guideline range if sentenced today. However, the referenced guideline amendment is not retroactive and, in any event, this issue is outweighed by the defendant's extraordinary criminal history and his ongoing misconduct while incarcerated.

The Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. Having done so, the Court does not find extraordinary and compelling reasons justifying the requested compassionate release. Compassionate release in this case would not reflect the seriousness of the instant offense, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of the defendant. The defendant's motion will accordingly be denied.

### III. APPOINTMENT OF COUNSEL

The defendant also moves for the appointment of counsel. [Doc. 552]. There is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the

7

litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion, but FDSET has not chosen to make an appearance in this case.

The defendant's motion for appointment of counsel will be denied.

## IV.  CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 553] and motion for appointment of counsel [doc. 552] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge